Good morning, Your Honors, and may it please the Court, I am Joe Josephson, representing Counsel. You may think your voice carries very well, but the acoustics are really terrible here. I'll try to speak. So if you could just speak up like there's no microphone, then we'll get all of your argument instead of part of it. Because I understand you only get paid for that part we hear, not the part you say. That may be determined by the outcome, too, Your Honor. If the Court please, I think there are two issues before this body. One is the issue of negligence. The second, the third-party beneficiary status. I want to talk about negligence first because otherwise the Court might assume that I'm over-defensive about that. We feel that the respectfully that the District Court erred in holding for District Court said that there was a duty and there was a breach, but had trouble with the problem of causation. We have cited the Robertson case from Arizona. This incident happened in Arizona. The accident omissions happened in Arizona for the proposition that the defendant's act or omission does not have to be a large or abundant cause of the injury. In my colleague's brief, it is said that one of our witnesses, Ms. Batchelder, was equivocal. She may have been equivocal, but under the standards we think that was sufficient to take the case to a jury on the question of negligence. Well, before you pass over that, is that the law as you understand it, no matter what they say, even though they're terribly impeached and even confess that they've been telling a lie, if you've got something in the record, you get to go. That seems to be what your statement was. I don't think you meant that. Isn't there some test that a jury, that the evidence has to be such that a jury would accept it for the position that it's given? And the argument is that when she says, I don't know, under oath, I don't know, I can't tell you, that there isn't enough to go to the jury. I think that's the argument. Well, I certainly don't think she said I lied. I mean, that... No, no, no, no. I was extreme there, saying that there is some area, it seems to me, where it doesn't go to the jury. But to your case, it seemed to me she backed down substantially. And when she says, I really don't know, under oath, what do you do with that? Well, she backed down. But, of course, Ms. Goss had said that there was a small window, I'm quoting her from that excerpt, that there was a small window once the original trauma healed to try to provide help through stimulation. I think that there would be enough that logically a jury, having heard both witnesses, the doctor, who I don't think examined Mr. Miller, and the delay in treatment, and his speech impediment, his permanent speech impediment. And I think that the evidence at this stage has to be only slight to get to that point. Now if I may go to the third-party beneficiary issue, Judge, because the Court called our attention to the Rathke case, Rathke v. CCA. And from my perspective, that case stands for the proposition that under Alaska law, which should be the law governing this issue, Mr. Miller is a third-party beneficiary of the contract between the State of Alaska and CCA. I don't think there's any question about that. It did occur to me that someone might say, yeah, but that decision came down in February after the United States District Judge ruled. But I remembered from my law school days that the common laws of brooding omnipresence in the sky, and it therefore existed and was found by the Court in February, that it always existed. So we think that there should be a remand for that purpose. What's the difference between, in terms of relief and proof, between the contract claim, the third-party contract claim and the negligence claim? I think there is a difference, Your Honor, in that at the minimum, under Restatement of Contracts, Section 346, where the contract is breached, the plaintiff would be entitled to at least nominal damages. That would not be true under the tort rules. So there is a difference. Well, breached even in the contract claim, he would still have to prove causation, correct? We would have to prove, yes, we would have to prove causation. You have essentially the same fundamental issue with respect to these affidavits. We would have to prove, I'm sorry? I mean, you have the same fundamental concern. Well, we would have to prove, yes, that the delay in treatment was a factor in his continuing speech problems. And if... Now, we're only talking about degrees, right? But I think what I said, I think, still pertains, that if the court, if the findings were that there was little contribution, there would be relief, but the relief would be nominal or small under contract law, perhaps nothing under tort law. I'll yield and reserve my time. Sir, could I ask one other question? Do you rely at all on the letter from the witness issue that you're relying upon from, for the causation issue? Are you speaking of Ms. Goss and Batchelder, both? Both wrote letters, yes. You're relying on that letter. Because we're at summary judgment, can we consider that letter? Well, they were considered by the district court. I know. Yeah. But a letter is unsworn, and under our rules, they don't count for determining summary judgment. I was just wondering what your position was on that. Well, I think they have been treated as part of the record by everybody and by the court below. When we look at it, we have to decide whether they're right or wrong in treating it that way. Are you suggesting there's some bestopple or stipulation that... There was no stipulation, but... Was there an objection? That it's not properly authenticated? I don't think so, no. I think the district court referred to both materials. I think all the briefing referred to both materials. And one part of the Goss letter, where she says we are looking at nerve damage, was disregarded by the trial court. I think that was a mistake, parenthetically, because Dr. Powers talked about nerve damage also. But they've always been treated here and should be considered by the school. Good morning, Your Honors. Eileen Dennis Gilbride for the defendant, CCA. I'd like to first explain why the Rathke case does not make Mr. Miller a third-party beneficiary of the CCA Alaska contract, which is the question that the court asked us to address. In Rathke, what the court held was that the prisoners were third-party beneficiaries of those portions of the contract that came directly from the Clery FSA, the Final Settlement Agreement. And in this case, we have no evidence at all that the portion of the contract upon which Mr. Miller relies was taken from the Clery FSA or that it has any relationship to the Clery FSA at all. The contract does say, in general, when it talks about prison operations, that generally CCA should follow Clery. But this case is not like Rathke, which compared the language of the FSA with the language actually incorporated in the contract. And therefore, this case is... Didn't the contract incorporate the settlement agreement? It says, generally, that CCA shall follow the Clery FSA, and that's all it says. What more do you need? Well, in Rathke, Rathke actually compared the language, and its holding was very limited to those parts of the contract that actually quoted from or were identical to the Clery FSA, and the holding was very limited. But it went out of the court, it went out of its way to say that Judge Sedgwick was wrong. It's not often that you get a state court reaching out and saying that a district court made the wrong decision. I agree with you there. So I should think you might disconcede it, but... Well, I can concede it because, as the judge has noted, even if Miller is a third party beneficiary, he still has to prove causation, that the breach of contract caused him damage. And here's what we were talking about earlier, in that neither Ms. Batchelder nor Ms. Goss testified that had he gotten speech therapy earlier, he would not have the same impediment that he has now. They were very equivocal. As Your Honor has noted, the letters that they rely on were unsworn. We did object to that on that basis. We're looking at summary judgment. Yes. Assume for a moment that the district judge got it wrong on the contract claim. That caused the whole thing. And it would seem to me, in order to go back, for him to look at it with the proper Alaska law in mind... Even so, Your Honor, even if there is a theory, a contract theory under Alaska law, we still go back to causation under Arizona law. Because on the causation of the negligence theory, there still has to be the causation. Why do we go back to Arizona? Because it's the same causation. If you have the breach, the duty, the breach, the causation under the negligence claim, which is under Arizona law, you have the same breach, the contract breach, you still have to have the same causation. Well, it's just, you have to have, show a cause. It was a causal factor. Correct. And here... So on summary judgment, here on summary judgment, he did produce evidence. He produced some evidence. And the question is whether, on summary judgment, it was proper for the district court judge to say that that evidence was insufficient to allow the case to go forward. That's correct. So, in terms of what the Supreme Court says, is it more than a scintilla of evidence... That's correct. ...that would let it go forward? That's correct. To the extent that the doctor's opinion conflicts with what these letters say, or what he offered, and there's a conflict, on summary judgment, we resolve that conflict in his favor. If they did conflict, I would agree. But in this case, both the Batchelder letter, which says, earlier intervention could have made a difference, and then she was asked on deposition, well, what did you mean by that? And she said, well, sometimes there's a window where speech therapy could make a difference, but in this case, I really don't know. I just don't know whether it would have. And Ms. Goss, who said, well, I don't know, given the time length, how much improvement he's going to make in the future. Neither of those can be read or even understood to mean that if he had gotten speech therapy earlier, then he would not have been suffering the impediment that he does now. It's just not enough, Your Honor, with all due respect. First, the letter says, maybe he could have, and then she explains that I really don't know if he could. And the Goss letter, again, which is unsworn, says, well, I don't know, but given the length of time that has gone by, I don't know how much more improvement he can make in the future. Neither of those can be read to say that speech therapy was necessary early so that he could avoid the damages he's suffering now. And our doctor, our neurologist testified in his affidavit, he said, early speech therapy doesn't make a difference, because when we're talking about nerve regeneration, speech therapy doesn't help that. You need to wait for the nerves to regenerate themselves, and then talk about speech therapy. So really, with all due respect, plaintiff's evidence isn't more than a scintilla. It's barely a scintilla. And our doctor's affidavit says early speech therapy was not warranted. And that's why there's no causation. And that's why it should be affirmed. Let me go back to the second claim, the contract claim. The district court, now that the district court knows by the light of the evidence the district court has to apply that the district court was wrong, the district court is going to take a new look, would take a new look, could take a new look at the contract claim. In that regard, the law of Alaska would apply, correct? Well, the contract law of Alaska would apply, yes. Alaska would apply. Now, he did not have that opportunity of applying the contract law of causation, et cetera, under Alaska, because he didn't need to. Correct. The way he decided it. Why doesn't Judge Noonan make a good point that we've never allowed the district judge to look at it under Alaska law? Why wouldn't we let the judge have the first crack at it to determine what Alaska law applies now with causation, et cetera? Well, because I think under any law, the causation just isn't there. You have to have some evidence that says if speech therapy had been given earlier, he would have improved. And we haven't had briefed for us the Alaska law of contract causation, have we? That's correct. We haven't needed to do that. Okay. Thank you. Unless Your Honor has any other questions, we'll just end by asking you to affirm. Thank you. Thank you. I just have one comment, unless there are other questions. It's interesting that when one reads the Goss letter and the doctor's affidavit, both speak of a need to have healing of the injury before speech therapy begins. But there isn't anything in the record, and I don't think the doctor speaks to that, as to how long in Mr. Miller's case that healing period would have consumed before speech therapy would have been appropriate. It can't be assumed that it took a whole year before the healing had finished and speech therapy was appropriate. I believe that the matter should go back to the court for consideration of causation under Alaska law, which has not been done, and for correction of the determination that there is no third-party beneficiary status. Thank you. Thank you. The matter will be submitted.
judges: Wallace, Noonan, Paez